# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
Filed: November 7, 2016

| | | |
|---|---|---|
| * * * * * * * * * * * * * | | PUBLISHED |
| JANET HOEHNER, | * | Case No. 14-637V |
| | * | |
| Petitioner, | * | Special Master Hamilton-Fieldman |
| | * | |
| v. | * | Attorneys' Fees and Costs; |
| | * | Local Rates; Travel Expenses; |
| SECRETARY OF HEALTH | * | Hours Expended; Memphis, Tennessee. |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

Michael McLaren, Black McLaren Jones Ryland & Griffee, PC, Memphis, TN, for Petitioner.
Ryan Pyles, United States Department of Justice, Washington, DC, for Respondent.

**DECISION ON ATTORNEYS' FEES AND COSTS**[1]

      Janet Hoehner ("Petitioner") seeks an award of attorneys' fees and costs under Part 2 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §§ 300aa-10 to -34 (2012) (hereinafter "Vaccine Act"). The main contested issue is Petitioner's assertion that her attorneys' hourly rates should be determined using the forum rate schedule set forth in *McCulloch v. Sec'y of HHS*, No. 09-293V, 2015 WL 5634323, at *19-21 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). *See* Pet'r's Mot. for Att'ys Fees at 4-5, ECF No. 47 (hereinafter "Mot.").

---

[1] Because this decision contains a reasoned explanation for the undersigned's action in this case, the undersigned intends to post this decision on the website of the United States Court of Federal Claims, in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 (2012). Each party has 14 days to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b).

Respondent asserts that the exception to forum rates, elucidated in *Davis Cty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. EPA*, 169 F.3d 755 (DC Cir. 1999), and first applied to vaccine cases in *Avera v. Sec'y of HHS,* 515 F.3d 1343 (Fed. Cir. 2008), should control here; correspondingly, Petitioner should be awarded local rates appropriate to Memphis, Tennessee, where her counsel practices.  *See Avera*, 515 F.3d at 1350; *see also* Resp't's Sur-Reply at 3, ECF No. 51.  After careful consideration, the undersigned hereby approves, in part, Petitioner's Application for attorneys' fees and costs, based upon application of the *Davis* exception.

## I.    PROCEDURAL HISTORY

On July 21, 2014, Petitioner filed a petition under the Vaccine Act, which alleged that she suffered from Guillain-Barré Syndrome ("GBS"), acute/chronic inflammatory demyelinating polyneuropathy ("AIDP" and "CIDP"), "and/or other neurologic and physical impairments" caused by the trivalent influenza vaccine.  Pet. at 1, ECF No. 1.  Based on the joint stipulation by the parties, the undersigned issued a decision awarding compensation to Petitioner on March 21, 2016.  Decision*,* ECF No. 42.

On May 16, 2016, Petitioner filed an Application for Attorneys' Fees and Expenses pursuant to Vaccine Rule 13.  Mot. at 1.  Petitioner requested $48,906.50 for attorneys' fees, $199.29 for expenses, and $7,453.78 for costs, for a total of $56,559.57.  Mot. (Ex. 2) at 24-25.  On June 1, 2016, Respondent filed a Response to Petitioner's motion, in which she argued that a reasonable amount for Petitioner's fees and costs would fall between $24,000 and $34,000.  Resp't's Resp. at 1-3, ECF No. 48.

Petitioner filed a Reply to the Response on June 30, 2016.  Pet'r's Reply, ECF No. 50.  In the Reply, at the undersigned's request,[2] Petitioner set forth her argument concerning why forum rates are appropriate in this case.  *Id.* at 3-18.  Petitioner also provided a "Supplemental Fee Bill" for $7,279.30 to cover the fees and costs incurred for the fee litigation.  Pet'r's Reply (Ex. 2).  On July 13, 2016, Respondent filed a Sur-Reply in which she made a detailed argument as to why Petitioner should not be awarded forum rates and why the hours and litigation expenses billed were unreasonable.  *See generally* Resp't's Sur-Reply, ECF No. 51.  Lastly, Petitioner filed a "Sur-Sur-Reply," on July 21, 2016, in which she criticized Respondent's use of "substantially lower" as the *Avera* standard, Respondent's reliance on stipulations to establish rates, the failure of Respondent to address experience levels in the District Court cases that Respondent cited, and reliance on the Real Rate Report.  Pet'r's Sur-Sur-Reply, ECF No. 52. Petitioner also defended

---

[2] On June 3, 2016, the undersigned informally contacted Petitioner's counsel's office to request that he "address, in his Reply, why counsel is entitled to compensation for his fees at a forum hourly rate rather than at a locality hourly rate." *See* Informal Communication, docketed June 3, 2016.

the specific travel expenses that Respondent disputed, including a steakhouse meal and a rental car upgrade, as well as fees incurred on "simple filings." *Id.* at 4-6.

The undersigned filed her Decision on fees on September 9, 2016. On September 16, 2016, Petitioner filed a Motion for Reconsideration, requesting "that the Court reconsider a single component of the mathematical equation used to determine Petitioner's counsel's base local rates, as set forth on page 10 of its Decision." Motion to Reconsider at 2-3, ECF No. 54. Respondent's request for additional time to respond to the Motion was granted in part, with a response due October 24, 2016. Order, ECF No. 58. No response was filed, and Respondent's untimely request for an additional extension was denied. Order, ECF No. 61.

The matter is now again ripe for adjudication.

## II.   DISPUTED ISSUES

### A. Reasonable Hourly Rate

The primary dispute in this case concerns setting reasonable hourly rates for Petitioner's counsel and paralegals. Petitioner asserts that the hourly rates should be based on the forum rates. *See generally* Pet'r's Reply. Respondent asserts that the overall amount of Petitioner's requested fees should be heavily reduced. *See generally* Resp't's Sur-Reply. Respondent also argues that the difference between the rates for attorneys generally in the forum (Washington, DC) versus the rates for attorneys in Memphis, TN, where Petitioner's counsel is located, is significant, and that the *Davis County* exception to forum rates therefore should apply. *See* Resp't's Sur-Reply at 7-11.

### B. Number of Hours Expended

Respondent also objects to the "unreasonable number of hours" that Petitioner billed in this case. Resp't's Sur-Reply at 11. Respondent requests that the undersigned "exercise her broad discretion to determine the reasonable hours . . . in this case." *Id.* at 12. As part of her objection to the overall number of hours billed, Respondent made specific objections to several aspects of Petitioner's counsel's billing practices.

### i. Hourly Rate for Time Spent Travelling

Petitioner argues that her attorney should be compensated at the full hourly rate for all time spent travelling, regardless of whether work was being performed during this time:

>Petitioner's counsel makes it a habit to work on the case while traveling when possible, such as on an airplane or while waiting on a layover in an airport, and counsel did so in this case . . . . However, during times when Petitioner's counsel is traveling but unable to actively work on the file, Petitioner asserts that the law supports the conclusion that the full rate should still apply.

Mot. at 9.

As a general matter, Respondent disagrees that Petitioner's counsel is entitled to compensation at his full hourly rate for travel time. Resp't's Sur-Reply at 11, n. 12. Respondent also notes that the travel time for which counsel billed at his full rate included driving time, and that he had billed "considerable time prior to his travel for performing the same tasks." *Id*.

### ii. Travel Expenses

Respondent also objects to a few of Petitioner's travel expenses, including an expensive meal and a rental car upgrade. Resp't's Sur-Reply at 11. In response, counsel points out that his total food and drink expenses over a three-day period amounted to only $125.65, and that this amount is less than the current federal government per diem allowance for meals and incidental expenses. Pet'r's Sur-Sur-Reply at 4-5. Petitioner's counsel also asserts that the car he ultimately rented saved money over the original rental. *Id.*

### iii. Billing an Attorney Rate for "Simple Filings"

Finally, Respondent argues that it was unreasonable for counsel to bill at attorney rates for tasks such as filing a notice of appearance and reviewing scheduling orders and notices of assignment. Resp't's Sur-Reply at 11. Petitioner argues, in response, that "it is reasonable for all counsel involved to stay apprised of what is happening in the case." Pet'r's Sur-Sur-Reply at 5-6.

### III.    LEGAL STANDARD

Under the Vaccine Act, a special master can award "reasonable" attorneys' fees and litigation costs in Vaccine Act cases. 42 U.S.C. § 300aa-15(e)(1). When petitioners are successful in pursuing a claim under the Act, their attorneys are entitled to compensation for their services. *See* § 300aa-15(e)(1).[3]

---

[3] When petitioners are unsuccessful, their attorneys still have the opportunity to obtain "reasonable attorneys' fees" if the special master finds that the petitioner in question filed the

4

The United States Court of Appeals for the Federal Circuit has approved use of the lodestar method to determine what constitutes reasonable attorneys' fees. *See Avera*, 515 F.3d at 1347-48. The lodestar method requires that a court multiply "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id*. (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Once the initial calculation is made, a court can adjust the fee award upward or downward based on other specific findings. *Id*. at 1348.

A special master, relying on her prior experience, has broad discretion in determining the reasonableness of the number of hours expended by attorneys. *See Saxton v. Sec'y of HHS*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). A special master can reduce any number of hours expended that are "excessive, redundant, or otherwise unnecessary." *Id*. (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)). The burden rests with the petitioner to prove that the number of hours expended was reasonable by "keeping records in a manner that will enable a reviewing court to identify distinct claims." *See Gruber v. Sec'y of HHS*, 91 Fed. Cl. 773, 785 (2010) (quoting *Hensley*, 461 U.S. at 437).

"Reasonableness" is generally determined by looking at a hypothetical plaintiff and whether that plaintiff would be willing to pay for particular expenditures when using his or her own resources to finance an attorney. *See O'Neill v. Sec'y of HHS*, No. 08-243V, 2015 WL 2399211, at *1-2 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Expanding on this idea, the Federal Circuit reasoned that "[h]ours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *See Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 433-34). Ultimately, the petitioner bears the burden to show that the requested attorneys' fees and expenses are reasonable. *See Hocraffer v. Sec'y of HHS*, No. 99533V, 2011 WL 3705153, at *1, *5 (Fed. Cl. Spec. Mstr. July 25, 2011), *aff'd*, 2011 WL 6292218 (Fed. Cl. Nov. 22, 2011).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum*, 465 U.S. at 895. The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n. 11. The petitioner bears the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

In *Avera*, the Federal Circuit determined that the forum of the Vaccine Act is Washington, DC. 515 F.3d at 1348. The Federal Circuit also decided that the forum rate for

---

petition "in good faith" and had a "reasonable basis for the claim." *See Sebelius v. Cloer*, 133 S. Ct. 1886, 1891 (2013). Because Petitioner was successful in pursuing her claim, these issues are not before the undersigned.

attorneys' fees should generally apply in Program cases. *Id.* However, it created an exception pursuant to *Davis County*: where most of an attorney's work is performed outside of the forum and there is a "very significant difference" between the forum rate and the attorney's lower local rate, a court should calculate fees under the local rate. *Id*. at 1349. A court must first determine the forum rate, then determine the local rate, and finally determine whether a "very significant difference" exists between them. *Davis Cty.*, 169 F.3d at 758.

Because the primary disagreement between the parties in the present case revolves around the hourly rates for counsel and paralegals, the analysis herein focuses heavily on that issue.

IV. **ANALYSIS**

    **A. Hourly Rates**

        i. **Forum Rates**

In *McCulloch*[4], Special Master Gowen undertook a detailed analysis of how previous special masters have determined appropriate forum rates. *McCulloch v. Sec'y of HHS*, No. 09-293V, 2015 WL 5634323, at *14-15 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Special Master Gowen then made three key findings that are relevant here. First, he compared the average hourly rates in Boston to those in Washington, DC and determined that they were not "very significantly different" pursuant to *Davis County* and *Avera*, and therefore concluded that attorneys in Boston should be compensated at the forum rates. *Id.* at *13-14. Second, he established "experience categories" to apply to forum rates based on the experience breakdown in the Laffey Matrix. *Id.* at *15, 19. Lastly, he concluded that 3.7 percent, as found in the Real Rate Report, was an appropriate annual growth rate for attorneys' fees for the years following the Great Recession (2009 onward). *Id.* at *9, 16.

Using a multifactorial approach, Special Master Gowen then calculated a range of forum rates based on five experience levels:

> [T]he range of $350 to $425 an hour for attorneys with more than 20 years of experience is a reasonable forum rate. The higher end of the range should be

---

[4] In numerous cases, the undersigned has concluded that the range of rates articulated in *McCulloch*, for the Washington, DC forum, were reasonable. *See, e.g.*, *Clowser v. Sec'y of HHS*, No. 13-2V, 2016 WL 3265894, at *2 (Fed. Cl. Spec. Mstr. May 23, 2016); *Faucher v. Sec'y of HHS*, No. 13-850V, 2015 WL 9252596, at *2 (Fed. Cl. Spec. Mstr. Nov. 25, 2015); *Gamardo v. Sec'y of HHS*, No. 13-797V, 2015 WL 9252532, at *2 (Fed. Cl. Spec. Mstr. Nov. 25, 2015).

awarded to those with significant Vaccine Program experience who perform high quality legal work in vaccine cases. Similarly, I have concluded that lawyers with 11 to 19 years of experience may reasonably charge $300 to $375 an hour, with higher rates to be paid to those with significant vaccine experience who perform quality work in these cases. Attorneys with 8 to 10 years' experience may reasonably request and be paid $275 to $350 an hour. Attorneys in practice for 4 to 7 years may reasonably charge $225 to $300, and those with less than 4 years' experience may receive between $150 and $225.

*Id.* at *19. After creating these rate ranges, he considered the various experience levels and qualifications of each attorney in the case and determined each attorney's rate accordingly. *Id.* at *19-20.

The undersigned finds Special Master Gowen's analysis and pay ranges useful for this case. If the forum rate applies, the appropriate hourly rates will be determined using the above factors and pay ranges, with one adjustment. Since the original Decision was posted in this case and then withdrawn, the Court of Federal Claims has posted on its website a chart denominated "[Office of Special Masters] Attorneys' Forum Hourly Rate Fee Schedule 2015-2016." That fee schedule is basically the schedule set forth in *McCulloch*, but with one significant difference applicable to the present case: an experience category was added to the top of that schedule, for attorneys with "31+ years of experience in practice, $385-$430." To the undersigned's knowledge that category has not been adopted in a decision such as *McCulloch*. Nevertheless, the addition of the category appears to the undersigned to be consistent with the fee structure announced in *McCulloch* and is therefore adopted by the undersigned in this decision. There is no question in the undersigned's mind that Mr. McLaren belongs in that top category, so his potential forum rate applicable herein has been adjusted accordingly. Specifically, for 2015, Michael G. McLaren's ("MGM") forum rate is at $420 per hour, William E. Cochran, Jr. ("WEC") at $345 per hour, Chris J. Webb ("CJW") at $295 per hour, and paralegals $135-145 per hour. Before awarding those rates, however, the undersigned must determine the local rate applicable to Memphis, Tennessee, where McLaren and his associates practice, and then decide whether a "very significant difference" between the two rate structures exists, such that it is more appropriate to award the lower local rate. *See Avera*, 515 F.3d at 1349.[5]

---

[5] Insofar as the *Davis County* exception is concerned, Petitioner's counsel's billing records clearly indicate that the bulk of work on her behalf was performed in Memphis, TN. Accordingly, the undersigned does not further discuss this portion of the exception.

### ii. Local Rates

Determining the local rates of an attorney's home "community" is no easy task. No set standard or scale exists to determine locality rates. Special Masters are therefore forced to rely on "declarations, previous comparable litigation, and [their] own experience in similar cases." *See Hall v. Sec'y of HHS*, 640 F.3d 1351, 1357 (Fed. Cir. 2011). Regardless of the analytical methodology utilized, the burden is on the petitioner to provide persuasive evidence that the requested rates are appropriate, *Blum*, 465 U.S. at 895-96, n.11, and the determination of what constitutes reasonable locality fees is within the special master's discretion. *Hall,* 640 F.3d at 1356.

Petitioner argues that the 2016[6] local rate for MGM should be $407 per hour. This rate is based on four pieces of evidence offered by Petitioner: 1) MGM's "current standard retainer local hourly rates for non-complex, general litigation matters," $405 per hour; 2) MGM's previously awarded rates in a contested vaccine case, *Heath v. Sec'y of HHS*, No. 08-86V, 2011 WL 4433646 (Fed. Cl. Spec. Mstr. Aug. 25, 2011), $280 per hour for work performed from 2007 through 2011, adjusted by a growth factor of 3.7 percent per year as set forth in *McCulloch* and the 2014 Real Rate Report submitted therein by Respondent, resulting in $336 to $388 per hour, depending on the year from which the growth rate adjustment is applied; 3) the rates awarded in 2015 in the U.S. District Court for the Western District of Tennessee (the district in which Memphis is located) to an attorney with 29 years of experience, for work performed during 2013-2015, which was $350 per hour (*see Cole v City of Memphis*, 2015 WL 5076974, at *6-8 (W.D. Tenn. Aug. 27, 2015)) adjusted by both the 3.7 percent growth factor and the "risk premium" factor of 18.3 percent developed by Special Master Gowen in *McCulloch,*[7] resulting in

---

[6] Petitioner calculated rates for 2016, and those are therefore the numbers the undersigned has reiterated for purposes of setting forth Petitioner's arguments. However, the most extensive data presented by both parties on local rates in Memphis, and the data that needed the least manipulation and adjustment, was from 2015. In addition, *McCulloch* was issued in 2015 and established 2015 forum rates for comparison, and much of the work performed in this case was performed in 2015. The undersigned's calculations of local rates are therefore for 2015, with appropriate adjustments for 2014 and 2016 as necessary.

[7] The undersigned agrees that it is appropriate to adjust rates for comparison using both the risk premium (an adjustment to rates awarded in non-vaccine cases to account for the fact that, in vaccine cases, attorneys' fees may be awarded regardless of whether petitioners prevail on their underlying claims, whereas in non-vaccine cases, fees are generally awarded only to prevailing parties) and a growth rate, and that the percentages established by *McCulloch* for that purpose are appropriate. However, Petitioner has applied them in the wrong sequence: the risk premium is the adjustment that makes the rates closer to an "apples to apples" comparison, and should be

a 2016 adjusted rate range of $297 to $319 per hour; and 4) the rates awarded in *Doe v. Bd. of Educ of Memphis City Sch.*, 2007 U.S. Dist. LEXIS 103207[8] (W.D. Tenn. Jan. 9, 2007), for work performed in 2005 and 2006 by an attorney with 40 years of litigation experience, which was $425 per hour, with growth factor and risk premium adjustments yielding a rate of $481 to $517 per hour. *See generally* Pet'r's Reply. Petitioner then took the median of the high, $517 per hour, and low, $297 per hour, adjusted rates derived as noted above, yielding an average local hourly rate of $407 per hour for 2016.

Petitioner cited similar evidence and performed similar calculations to yield local hourly rates for WEC (14 years of experience) of $311 per hour (the median of $328 per hour and $294 per hour), and for CJW (8 years of experience) of $270 per hour.

Respondent countered with several 2015 vaccine cases in which Petitioner's counsel had actively sought or negotiated a rate for MGM of $300 per hour, for WEC of $275 per hour, for CJW of $240 per hour, and for paralegals of $100 per hour. Resp't's Sur-Reply at 4. In fact, Respondent noted in her Sur-Reply, these rates "may actually be high," in light of rates awarded in cases from the Western District of Tennessee, including the *Cole* case cited by Petitioner, and in light of the rates identified in the 2014 Real Rate Report. *See id.* at 4-7. Respondent ultimately used these rates for comparison and argument concerning application of the *Davis County* exception. *Id*. at 9.

The undersigned agrees with Respondent that evidence concerning the rates Petitioner's counsel was willing to accept in vaccine cases in 2015 is relevant to the question of what constitutes appropriate local rates in this case. However, the undersigned is not convinced that they are truly "local" rates— they appear to be a hybrid of sorts, reached after some litigation and much negotiation, and to have been applied exclusively in vaccine cases prosecuted by these attorneys, quite isolated from other fees awarded in the Memphis locality they purportedly represent. As such, they should be considered in the mix of rates to reach a "local" rate, but they should not in themselves be determinative of that rate. In addition, there is no doubt that these rates have grown far slower than would otherwise be expected— $280 per hour was the rate applied in *Heath* to MGM's services performed from 2007 to 2011; $300 per hour in 2015 represents only a 7.1 percent increase over 4-8 years, which is completely out of sync with the 3.7 percent annual growth rate in attorneys' fee rates put forth in Respondent's own exhibit, the Real Rate Report (which was itself significantly less than the 7 percent growth rate in

---

applied first, and the growth rate should then be applied to the resulting risk premium adjusted number.

[8] The undersigned cites to Lexis because no Westlaw citation is available.

attorneys' fee rates that had applied before the Great Recession)[9]. *See McCulloch*, 2015 WL 5634323 at *16.

Using the rates awarded in cases from the Western District of Tennessee, cited by both parties,[10] as well as the *Heath* rates, adjusted by application of the 3.7 percent growth factor from 2009 to 2015, and the final rates relied upon by Respondent, the undersigned determines that the following are the applicable local rates for 2015 for Petitioner's counsel.

For MGM, the undersigned uses an average of four rates to reach the applicable local rate. First, there is the rate of $350 per hour from *Cole*, reduced by 18.3 percent ($64), for a 2013 rate of $286, multiplied by the 3.7 percent growth factor to 2015, yielding $308 per hour.[11]

---

[9] This slow growth rate was recently recognized by another special master in *Dezern v. Sec'y of HHS,* 13-643V, Slip Op. (Fed. Cl. Spec. Mstr. Oct. 14, 2016). In that decision, Special Master Corcoran noted that "[t]he rates paid to Vaccine Program counsel may well have been held down for the past several years, whether due to slow economic growth generally or informal compensation/rate agreements struck between frequent Program counsel and the Department of Justice that have now been deemed (not surprisingly, by the petitioners' bar) stale."

[10] Although Petitioner asserted that the "most comparable rate situation" for MGM's fees is that presented by *Doe*, the undersigned finds that case inapposite. *Doe* involved allegations of child sexual abuse by persons in positions of trust (the case was brought against, among others, teachers and a principal in both their official and personal capacities). 2007 U.S. Dist. LEXIS 103207, at *4-5. In awarding fees, the court specifically considered: the difficulty and complexity of the litigation; the possibility that counsel would not be compensated at all; "the undesirability of the case," given the "nature of the allegations and the distastefulness of the subject matter," the difficulties in pursuing the case, "including the reluctance of witnesses and Defendants to be forthcoming in matters such as this," and "just as critically important, the necessary litigation skill and expertise required to obtain information, interview witnesses and perform the legal services necessary to secure the result achieved in this case for the minor Plaintiff." 2007 U.S. Dist. LEXIS 103207 at *4-5. Accordingly, the 18.3 percent risk premium from *McCulloch* is simply inadequate to account for the differences between *Doe* and the litigation at issue here. The undersigned therefore did not include *Doe* in her local rate calculations.

[11] The undersigned has some of the same concerns about *Cole* as she has about *Doe*, although to a lesser degree: *Cole* was a class action case brought by Plaintiffs Cole and Edmond seeking injunctive relief and monetary damages against the City of Memphis for its allegedly unconstitutional practice of clearing pedestrians from Beale Street in Memphis without any public safety reason for doing so. After trial, a jury found that Cole had been removed from

Second, there is the *Heath* rate of $280 per hour, multiplied by the 3.7 percent growth factor from 2009 (the end of the Great Recession) to 2015, yielding $348 per hour. Third, there is the rate that MGM charges private clients for general civil litigation, $405 per hour, less the 18.3 percent risk premium, yielding $331 per hour.[12] Fourth and finally, there is Respondent's

---

Beale Street without probable cause or the existence of a risk to public safety, with excessive force, and as the result of a well-established practice of the Memphis Police Department, and awarded him $35,000 in damages. The trial court subsequently ruled that the practice was unconstitutional. 2015 WL 5076974 at *1-2. Prior to trial, Plaintiffs' counsel was required to brief several motions to dismiss and motions for summary judgment and to brief and argue their class certification motion; post-trial they were required to brief remedies issues, participate in a hearing on injunctive relief, and respond to Defendants' motion to decertify or modify the class. *Id.* At *3. There was, in addition, the risk that no compensation or less compensation might be awarded, as the fees statute applicable *Cole*, 42 U.S.C. §1988(b), permits but does not require the award of attorneys' fees to a prevailing plaintiff, *see id.* at *6, whereas an award of fees to a prevailing petitioner is mandatory under the Vaccine Act. 42 U.S.C § 300aa-15(e)(1).

      These legal complexities far exceed the legal complexities encountered in Program cases, even Program cases that proceed to hearing, which the present case did not. Nevertheless, both parties have cited the *Cole* case as one upon which the undersigned should rely after the 18.3 percent risk premium adjustment has been applied, and that adjusted rate is therefore included in the undersigned's calculations.

[12] It is the undersigned's adjustment of this rate by the risk premium that underlies Petitioner's Motion for Reconsideration. Petitioner's counsel argues that his clients pay his fees for this type of litigation whether or not they prevail on their claims, and therefore that the risk premium applied to fee-shifting statute awards should not apply. While fee-shifting cases are one example of the application of a risk premium discount to fee rates, they are not the only context in which that application is appropriate. The undersigned was in private practice for a number of years, and knows too well the vagaries of billing – post-retainer no pay and slow pay, discounting and charge-offs, client satisfaction adjustments, client bankruptcies. Even large firms with the resources to commit to aggressive collections build in an uncollectibles percentage into their business plans. It is a rare small firm that does not include a 15 to 20 percent cushion in its business plan to account for these uncollected fees. The undersigned's application of the 18.3 percent risk premium to the rates charged by Petitioner's counsel to private clients accounts for these issues in the calculation of a local rate.

suggested rate of $300 per hour. Adding $308, $348, $331, and $300 equals $1287, which, when divided by 4, yields a 2015 rate of $321.75, which the undersigned rounds up[13] to $322 per hour.

For WEC, the undersigned uses a similar average. First, there is the $240 per hour from *Heath*, in 2009, multiplied by the 3.7 percent growth factor to 2015, yielding $299 per hour. Second, there is the $300 per hour, from local cases in which attorneys of similar experience were awarded such a rate,[14] less the 18.3 percent risk premium, multiplied by the 3.7 percent growth factor from 2011 to 2015, yielding $283 per hour. Third, there is the rate that WEC charges private clients for general civil litigation, $300 per hour, less that 18.3 percent risk premium, yielding $245 per hour. Fourth and finally, there is Respondent's suggested rate of $275 per hour. Adding $299, $283, $245, and $275 equals $1102, which, when divided by 4, yields a 2015 rate of $276 per hour.

For CJW, the undersigned repeats her calculations. First, there is the rate of $250 per hour in *Cole*, less the 18.3 percent risk premium, grown by the 3.7 percent growth factor from 2013 to 2015, yielding $220 per hour. Second, there is the rate of $300 per hour in another local case,[15] less the 18.3 percent risk premium, grown by the 3.7 percent growth factor from 2009 to 2015, yielding $304 per hour. Third, there is the rate that CJW charges private clients for general civil litigation, $250 per hour, less the 18.3 percent risk premium, yielding $204 per hour. Fourth and finally, there is Respondent's suggested rate of $240 per hour. Adding $220, $304, $204, and $240 equals $968, which, when divided by 4, yields a 2015 rate of $242 per hour.

In summary, the applicable local rates for Petitioner's counsel are:

-MGM:     $322
-WEC:     $276
-CJW:     $242

---

[13] Multiplying by 3.7 percent and 18.3 percent frequently leads to uneven numbers. In performing the calculations used herein, the undersigned rounded up amounts from .50 to .99, and down from .49 to .01.

[14] *See* Pet'r's Reply at 10-11 (citing *Jeffery Jacobs v. Memphis Convention and Visitors Bureau*, No. 2:09-025999, 2012 WL 4461275, at *1 (W.D. Tenn. Sept. 25, 2012); *Macklin v. Delta Metals Co.,* No. 2:08-cv-02667, 2011 WL 11417, at *2-3 (W.D. Tenn. Jan. 4, 2011)).

[15] *See* Pet'r's Reply at 12 (citing *Monroe v. FTS USA, LLC*, No. 2:08-cv-02100-JTF-cgc, 2014 WL 4472720, at *9-10 (W.D. Tenn. July 28, 2014)).

   -Paralegals:    $105[16]

Having established the reasonable local rates for Petitioner's counsel, the undersigned must now determine whether the local rate or the forum rate should apply.

### iii. The Local Rates Should Apply In This Case

It is important to note that *McCulloch* did nothing to change *Avera* and the requisite *Davis County* exception analysis when determining attorneys' fees. The Federal Circuit in *Avera* concluded that the *Davis County* exception "represent[ed] a sound approach to setting" reasonable hourly rates. *See Avera*, 515 F.3d at 1349. The Federal Circuit has reiterated repeatedly that "*Avera* remains binding precedent" and "is thorough, well-reasoned, and has not been undermined." *Masias*, 634 F.3d at 1288; *see also Hall*, 640 F.3d at 1355 ("[U]ntil *Avera* is overturned . . . it remains binding precedent."). Therefore, when determining the difference between locality rates and forum rates, it is important not to overlook *Avera* nor underestimate the imperativeness of its principles.

One of the key principles from *Avera* is the often cited, controlling language, "very significant difference;" and one of the more difficult analytical problems when interpreting *Avera* is determining the boundaries of that language. *Avera*, 515 F.3d at 1349; *see also Masias v. Sec'y of HHS*, No. 99697V, 2009 WL 1838979, at *25 (Fed. Cl. Spec. Mstr. June. 12, 2009) ("What constitutes a 'very significant difference' is not defined."), *aff'd*, 634 F.3d 1283 (Fed. Cir. 2011); *Garrison v. Sec'y of HHS*, No. 14-762V, 2016 WL 3022076, at *7 (Fed. Cl. Spec. Mstr. Apr. 29, 2015) ("[The *Davis County* and *Avera*] decisions do not provide guidance on where to draw the line as to what constitutes a 'very significant' difference . . . ."), *aff'd*, 2016 WL 4784054, at *9 (Fed. Cl. Aug. 17, 2016). Even the Federal Circuit employed different language combinations within *Avera*. *See* 515 F.3d at 1349-50 (using "substantially lower" and "significantly higher" in context of *Davis* exception).[17]

To the undersigned, the question is not so much a semantic one—*what* is a very significant difference—as it is a question of perspective—*to whom* is it very significantly

---

[16] For the law clerks and paralegals, the undersigned used the $85 per hour rate from *Heath*, multiplied by the 3.7 percent growth factor from 2009 to 2015, yielding $105 per hour.

[17] The Supreme Court's decision in *Fox v. Vice*, 563 U.S. 826, 838 (2011), is instructive here: "[T]rial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection."

different? In the context of one half of the lodestar equation, whether the hours an attorney expended were reasonable, the Federal Circuit has directed that the perspective is that of a putative client—would a client find the hours reasonable, and be willing to pay for them? *See Saxton*, 3 F.3d at 1521. In the context of the other half of the lodestar equation then, e.g., rates, that perspective seems appropriate, as well. Thus, the question in the present case becomes this: would a putative client find a difference between forum rates and local rates of between 22 and 27 percent to be "very significant?" The undersigned finds that a reasonable putative client would indeed find that difference to be very significant.

The undersigned also finds that, when one takes into account the cost of living difference between the two fora, the distinction is warranted. For instance, a person who earns $100,000 per year in Washington, DC would need to earn only $57,561 per year in Memphis to maintain a similar standard of living, which is a 42 percent difference.[18] Furthermore, consider the following comparison between Memphis and Cheyenne, Wyoming; a senior attorney earning $200,000 per year in Memphis would need to earn $221,212 per year in Cheyenne to maintain a similar standard of living—an 11 percent difference.[19] This comparison is intriguing, given the fact that the Federal Circuit has determined that attorneys in Cheyenne who work in the Vaccine Program should be compensated using local rates instead of forum rates. *See Avera*, 515 F.3d at 1350 (awarding Cheyenne rates because DC rates were very significantly higher than Cheyenne rates); *Masias v. Sec'y of HHS*, 634 F.3d 1283, 1286-88 (Fed. Cir. 2011) (awarding local rates to Cheyenne-based attorney). Given the above comparisons, it is difficult to comprehend why attorneys in Cheyenne should be awarded local rates while attorneys in Memphis should be awarded forum rates.

Finally, awarding forum rates to Petitioner would result in a substantial "windfall" to Petitioner's counsel. The underlying principle in *Davis County*, which *Avera* reiterated, is to avoid the "vast overcompensation" of counsel that would result in a "windfall." *See Davis Cty.*, 169 F.3d at 759-60; *Avera*, 515 F.3d at 1349. As Respondent noted in her pleadings, as recently as 2015, Petitioner's counsel accepted and even requested rates of $300 per hour for MGM and

---

[18] *See Cost of Living Calculator*, Bankrate, http://www.bankrate.com/calculators/savings/movingcost-of-living-calculator.aspx (last visited August 6, 2016); *see also McCulloch*, 2015 WL 5634323, at *10, n. 23 (relying on Bankrate's cost of living calculator).

[19] *See Cost of Living Calculator: Memphis, Tennessee to Cheyenne, Wyoming*, Payscale http://www.payscale.com/cost-of-living-calculator/Wyoming-Cheyenne/TennesseeMemphis/Senior-Attorney (last visited on August 6, 2016); *see also McCulloch*, 2015 WL 5634323, at *10, n. 24 (relying on calculator).

lesser rates for his associates. *See* Resp't's Sur-Reply at 9-10. The forum rates Petitioner has requested for MGM, $410 per hour, would constitute a 37 percent rate increase to MGM, which the undersigned finds would constitute the "vast overcompensation" discouraged by *Davis County* and *Avera*.

For all of the reasons stated above, the undersigned finds that the local rates applicable in the Memphis, Tennessee area, as enumerated earlier, should apply in this case,[20] with one addition: most of the factors considered when determining rates for attorneys' fees are objective and quantifiable—cost of living, fees awarded in other cases, etc. There are, however, factors that are intangible and difficult to quantify, such as experience and leadership, that nevertheless are clearly relevant to the question of what fees should be awarded in this case. Mr. McLaren is a founding partner of his firm. He has over 40 years of practice experience, and has been involved in the Vaccine Program since its inception. He brings to the Program not only his own experience and acumen, but his leadership—he has brought associates from his firm into the Program, associates like Mr. Cochran and Mr. Webb who themselves now have extensive experience in the Program that they can use on behalf of their clients. While *Doe* was clearly not the vehicle through which to include MGM's experience in the fees calculation herein, his experience and leadership nevertheless merits additional compensation. This is especially so given the undersigned's aforementioned observation that it is the client from whose perspective an attorneys' fees decision should be based—clients are particularly likely to value qualities like experience and leadership. Accordingly, pursuant to the discretion afforded to the undersigned to "adjust the product upward or downward based on other specific findings," *Masias*, 634 F.3d at 1286, the undersigned finds that it is appropriate to add a 15[21] percent experience premium to Mr. McLaren's base local rate. Applying that premium to the rates determined in this case yields a rate for MGM of $357 per hour for 2014, $370 per hour for 2015, and $384 per hour for 2016.

### B. Travel

#### i. Hourly rate for travel time

Petitioner requested that the undersigned award her counsel the full hourly rate for all travel time billed during the litigation. Mot. at 9. Petitioner noted that her counsel "makes it a

---

[20] The 3.7 percent growth factor will be subtracted from those 2015 rates to determine 2014 rates, and added to those rates to determine rates applicable to services rendered in 2016.

[21] The undersigned's previous Decision awarded a 10 percent experience premium. However, the posting of the Forum Rate Schedule and of decisions such as *Dezern v. Sec'y of HHS*, No. 13-643V, Decision on Fees and Costs, ECF No. 57, and *Garrison*, 2016 WL 3022076, (Fed. Cl. Spec. Mstr. Apr. 29, 2015), *aff'd*, 2016 WL 4784054, at *9 (Fed. Cl. Aug. 17, 2016), led the undersigned to conclude that 15 percent is more appropriate.

habit to work on the case while traveling when possible . . . and did so in this case where indicated on the attached fee bill." *Id.* In support of this assertion, Petitioner relies primarily on the Federal Circuit's decision in *Crumbaker v. Merit Sys. Protection Bd.*, 781 F.2d 191 (Fed. Cir. 1986). Conversely, Respondent argued that Petitioner should not receive her full hourly rate for time traveled. Resp't's Sur-Reply at 11-12.

Special masters have consistently awarded attorneys 50 percent of their hourly rate for travel time. *See Hocraffer*, No. 99-533V, 2011 WL 3705153, at *24. At the same time, there is no set standard for determining the appropriate rate for travel time, and special masters have much discretion in determining "reasonable" rates. *See Gruber*, 91 Fed. Cl. at 791. Special masters should assess each case "on its own merits." *Id.*

In *Crumbaker*, the Federal Circuit reversed the Merit Board's travel rate reduction and awarded the attorney his full hourly rate for traveling. 781 F.2d at 193-94. The Court adopted the Seventh Circuit's reasoning in *Henry v. Webermeier*, 738 F.2d 188 (7th Cir. 1984), essentially concluding that the appropriate billing rate probably was "the same billing rate as would be appropriate for the other time the lawyers put in on the case." *Id.* at 193. Of course, as the Federal Circuit court noted, the client in *Crumbaker* "did not give wholesale approval to compensation of full rate, attorney travel time in every circumstance." *See Gruber*, 91 Fed. Cl. at 790. Instead, the Court merely held that a "presumption" that "a reasonable attorney's fee includes reasonable travel time" exists. *Crumbaker*, 781 F.2d at 194. Further, the simple fact that an attorney is traveling is insufficient to merit an award; a petitioner must submit adequate documentation to show the specifics of the work performed. *See Kuttner v. Sec'y of HHS*, No. 06-195V, 2009 WL 256447, at *1, *10 (Fed. Cl. Spec. Mstr., Jan. 16, 2009); *see also O'Neill*, 2015 WL 2399211, at *8 (noting the attorneys' documentation of travel was "generic and unspecific").

Here, Petitioner made two travel entries, one to Cincinnati, and one to Memphis on return, that were charged at CJW's hourly rate. *See* Mot. (Ex. 2) at 8. These entries, however, are not specific enough to determine whether CJW performed work the entire time that he traveled. *Id.* While Petitioner listed some specific tasks that CJW performed, the entries shed little light on whether CJW actually performed these tasks during each phase of the trip.[22] As a result, an award of the full hourly rate for travel is not appropriate; rather, awarding half the

---

[22] For instance, the first travel entry read as follows: "Travel to Cincinnati for Meeting with Client and Review Materials, Medical Records, and Agenda While in Flight in Preparation for Same." *See Mot.* (Ex. 2) at 8. This line entry is especially generic and confusing, given that it takes place over eight hours. It is unclear whether CJW actually performed this work during his entire travel or merely while his plane was "in flight."

hourly rate (50 percent) for time spent traveling is more reasonable given the facts at hand. *See Hocraffer,* 2011 WL 3705153 at *24 ("Special masters consistently award compensation for travel time at 50 percent of the billing rate in the Vaccine Program."); *see also Gruber*, 91 Fed. Cl. at 788 ("Even an automatic award may be too high . . . given that an attorney may use the travel time to work on another matter . . . .").[23]

### ii. Expenses

Two of CJW's travel expenses (specifically the meal at Ruth's Steak House and the rental vehicle upgrade), *see* Mot. (Ex. 2) at 43, have drawn Respondent's criticism. While CJW was not technically billing these expenses on a per diem basis, the undersigned understands the practice of deferring lesser meal expenses in favor of one more extravagant one. While in the future the undersigned suggests making the per diem argument more explicit on the face of the fee application, the steak house meal is allowed. That being said, the undersigned sees no such justification for the vehicle upgrade, and thus reduces that expense by the amount for the "rental upgrade," which results in $288.45 instead of $338.45. *See id.* at 47.

### C. Reasonableness of Hours

Respondent argued that the number of hours that Petitioner billed for "simple" tasks (reviewing Respondent's notice of appearance and scheduling orders, for example) was unreasonable, and thus, the overall number should be reduced. Resp't's Sur-Reply at 11-12. The undersigned disagrees.

It is legitimate for Petitioner's counsel to open and review these "simple filings" to which Respondent referred. Further, the number of hours actually billed for these tasks was not unreasonable.[24] *See Mot.* (Ex. 2) at 6-7, 13 (billing 0.1 hours for these tasks). Ultimately, it is within the undersigned's discretion to determine whether the number of hours expended is

---

[23] The undersigned does not find persuasive Respondent's argument that he was performing duplicative work while traveling between Cincinnati and Memphis.

[24] To the extent Respondent's argument on this issue is directed toward the hierarchical structure of Petitioner's counsel's firm, which results in multiple attorneys billing on one case, the undersigned notes that Respondent's counsel's firm is similarly structured, as are most firms comprised of attorneys with varying levels of experience, and that the benefit to both the younger attorneys, their clients, and the Program, from the oversight of these experienced attorneys, generally more than offsets any duplicative billing. It certainly has done so in this case, where Mr. McLaren's share of the total attorneys' hours expended was minimal (only 12.2 on the case in chief including the attorneys' fees application, and 1.2 on the supplemental fee request).

reasonable, based in part on previous experience. *See Saxton*, 3 F.3d at 1521. The undersigned does so here and concludes that the number of hours expended is reasonable.

### D. Supplemental Request

Petitioner also submitted a supplemental request for attorneys' fees and costs on June, 30, 2016, to which Respondent did not object. *See* Pet'r's Reply (Ex. 2). The undersigned finds that the hours requested in the supplemental fees request are reasonable. Those fees are awarded based on the hourly rates determined herein.

### V. CONCLUSION

In sum, the table below includes the amounts of attorneys' fees and expenses that the undersigned awards Petitioner:

| | |
|---|---|
| Attorneys' Fees Requested | $48,906.50 |
| Reductions | $ 7,894.65 |
| **Attorneys' Fee Award** | **$41,238.35** |
| | |
| Attorneys' Administrative Costs (photocopies, postage, etc.) Requested | $199.29 |
| Reductions | $0.00 |
| **Attorneys' Administrative Costs Award** | **$199.29** |
| | |
| Attorneys' Costs and Expenses Requested | $7,453.78 |
| Reductions | $50.00 |
| **Attorneys' Costs and Expenses Award** | **$7,403.78** |
| | |
| Supplemental Fees and Costs Requested | $7,279.30 |
| **Supplemental Fees and Costs Award** | **$6,007.90** |
| | |
| **Total Attorneys' Fees and Costs Awarded** | **$54,849.32** |

**Accordingly, pursuant to 42 U.S.C. § 300aa-15(e), the undersigned hereby awards the amount of $54,849.32, in the form of a check made payable jointly to Petitioner and**

18

**Petitioner's counsel, Black McLaren Jones Ryland & Griffee**.  In the absence of a motion for review filed pursuant to RFCF Appendix B, the clerk of the court is directed to enter judgment herewith.[25]

    **IT IS SO ORDERED.**

s/Lisa Hamilton-Fieldman
Lisa Hamilton-Fieldman
Special Master

---

[25] Pursuant to Vaccine Rule 11(a), the parties can expedite entry of judgment by each party filing notice renouncing the right to seek review of a judge of the United States Court of Federal Claims.